## THE PORTLAND TELEGRAM et al. v. NEW ENGLAND FIBRE BLANKET CO.
### No. 6023.

Circuit Court of Appeals, Ninth Circuit.
March 10, 1930.

Joseph, Haney & Veatch, of Portland, Or., for appellants.

T. J. Geisler, of Portland, Or., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge.

This is an appeal from an interlocutory decree enjoining defendants (appellants) from infringing patent No. 1,227,557, issued May 22, 1917, to Cochran and Youngs and by them later assigned to plaintiff (appellee). The patent relates to what in the publishing business is known as a "make-ready," which is a resilient covering for the impression cylinder of a modern rotary printing press. In the operation of such a press, the news print, flowing from a reel, is drawn like a ribbon between two rapidly revolving metal cylinders upon the circumferential surface of one of which is mounted the stereotype plate. Because of unavoidable irregularities in the face of the type plate, it is requisite that the surface material of the impression cylinder, against which the paper is pressed in taking the imprint, have a measure of resiliency. To provide this is the function of the "make-ready." It is scarcely necessary to add that when so built up, the two cylinders, one bearing the type plate and the other equipped with this cover, must be of equal diameter. Prior to 1911 the "make-ready" most commonly used consisted of two parts, first, a thin rubber sheet, and over that an outer sheet or blanket of felt. Both units possessed undesirable qualities and in use soon developed imperfections; the rubber sheet was subject to disintegration from printers' ink and, matting down, the felt lost its "come-back" or resiliency.

On September 26, 1911, patent No. 1,-004,385 issued to A. F. Decker, for an improved blanket, which apparently he intended as a substitute for the rubber sheet of the prior art. We say apparently, for while he does not mention the felt strip which constituted a part of the complete "make-ready" then in common use, it is a fair inference from his specifications and claims that he had in mind only a substitute for the rubber unit. The only consideration he clearly expresses and emphasizes is that his invention is immune from the disintegrating and blistering effect of printers' ink. Substantially, his blanket consists of a body layer or ground of comminuted cork mixed with a suitable binding agent containing oil, this body layer being faced upon both sides with fabric closely adherent thereto and all pressed together so as to form a single structure. While in any thickness undoubtedly such a blanket would have a measure of "come-back," if very thin the amount thereof would be less than what is indispensable to a complete "make-ready." Moreover, when this patent was cited against the Cochran-Youngs application, it was shown that the sheet manufactured under it, and marketed as "Tindeck," was too thin to serve such a purpose and in practice was always used together with the felt strip of the prior art. We are therefore constrained to the view, apparently prevailing in the Patent Office, that Decker's conception relates only to a substitute for the rubber unit. And impliedly the correctness of this view is confirmed by appellants, for they have expressly conceded the validity of the patent in suit, which the Decker patent clearly anticipates unless it be so interpreted.

The essential novelty of the Cochran-Youngs invention resides in the conception of a blanket not otherwise substantially unlike that of Decker, but of sufficient thickness in itself to afford the requisite resiliency, thus dispensing with the necessity of an additional unit such as the felt strip of the prior art. We need not here particularly examine their specifications or analyze their claims, for it is scarcely controverted that such was their conception and that it is clearly disclosed and appropriately claimed. The means or agency they employed is not new, for, as already suggested, it is not widely different in point of texture or construction from that of Decker; indeed, it is very similar to the common floor covering known as linoleum. But their discovery was of a new property, or of the availability for a new use, in a different class, of an old material. This is not a double use resulting from mere mechanical skill, but in contemplation of the law is more closely analogous to that recognized as constituting patentable novelty in Colgate v. Western Union Tel. Co., 15 Blatchf. 365, Fed. Cas. No. 2995, referred to with approval in Busell Trimmer Co. v. Stevens, 137 U. S. 434, 11 S. Ct. 150, 34 L. Ed. 719.

Up to this point there is in reality little controversy between the parties, and we now come to the consideration upon which appellants chiefly rely. Claim 1 of appellee's patent, which, in so far as concerns this consideration, fairly represents all, is as follows: "A 'make-ready' for impression cylinders consisting of a strip of substantial thickness made wholly of comminuted mate-

rial having resilient properties similar to cork, held in mass by a suitable binding agent, and including other material adapted to hold the mass against pulling apart, said 'make ready' being made of a thickness adapted for imprinting directly thereon." From the claims and from the specifications as a whole it is apparent that the inventors had particularly in mind a single sheet or blanket of sufficient thickness to furnish the requisite resiliency. They were at the time pressmen upon The Oregonian, at Portland, Or., and considering the press requirements there, they suggest in their specifications a thickness of approximately .145 of an inch. In the earlier period of manufacture they put out blankets of divers thicknesses to the end that any publisher might procure upon the market one of the precise size required for his particular press. Demand for such blankets grew with extraordinary rapidity, and at the time of the trial below, the testimony tends to show, approximately 99 per cent. of all the large newspapers in the United States were using them. After appellee acquired the patent, in 1920 or 1921, it concluded that it was economically impracticable to manufacture blankets suitable in thickness to meet the varying needs of numerous presses, and accordingly it adopted the practice of putting out certain specified gauges so that they could be used either singly or in combination to give the requisite thickness for any particular case. Whether thin or thick, they are all of the same material and construction; and whether single or in combination, they are intended for use and are used without the felt or any other auxiliary sheet. Owing to the fact that cork compresses vertically, with very little "flow," there is only a negligible difference in the degree of resiliency between a single blanket of a given thickness and a make-ready built up to such thickness by a combination of two or three sheets.

The make-ready used by appellants is so built up; that is, to get the desired thickness they use two identical layers or sheets superimposed one upon the other, and these two sheets are basically cork, faced or backed by fabric, substantially as called for in the patent in suit and manufactured by the appellee. Appellants' position is that under the patent appellee can claim a monopoly for such a make-ready only when it is in a single piece or sheet. With this view we are unable to agree. As already suggested, we think by their reference in the patent to a single sheet or strip the patentees intended only to differentiate their invention from the make-ready then familiar in the art, consisting of two pieces or units differing both in character and in function. Their patent, therefore, is not to be so restricted as to exclude from its coverage the use of a plurality of sheets of the same character and performing identically the same function, as a single sheet of equal bulk. Their invention undoubtedly marked a substantial advance in the art, and their patent is to be given a reasonably liberal construction so as to secure to them the reward to which they are entitled. See Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

The lower court was right in finding infringement, and accordingly the decree is affirmed.

RUDKIN, Circuit Judge, sat at the hearing, but took no part in the decision of the case.